# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BRYAN E. RANSOM,

          Plaintiff,

  v.

M. JOHNSON, et al.,

          Defendants.

_____/

CASE NO. 1:05-CV-00086-OWW-LJO-P

ORDER REQUIRING PLAINTIFF TO EITHER
FILE AN AMENDED COMPLAINT OR
NOTIFY THE COURT OF HIS WILLINGNESS
TO PROCEED ONLY ON THE CLAIMS
FOUND BY THE COURT TO BE
COGNIZABLE AND TIMELY

(Doc. 1)

I.    Screening Order

    A.    Screening Requirement

      Plaintiff Bryan E. Ransom ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on January 21, 2005.

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

B.      Summary of Plaintiff's Complaint

The events at issue in the instant action allegedly occurred at the California Substance Abuse Treatment Facility and State Prison-Corcoran, California State Prison-Sacramento, and California State Prison-Corcoran.  Plaintiff names the following fifty-seven individuals as defendants:  Captain M. Johnson, Lieutenant G. Lilly, Associate Warden B. Espinosa, Captain A. Canton, L. Melching, Sergeant P. Flores, Warden D. Adams, J. Atkinson, D. Lankford, J. Diggs, E. L'Etoile, E. Alameda, B. DeGroot, Director John Doe, Officer Goodwin, Chief Deputy Warden Burruel, Chief Deputy Warden Rosario, Captain Vance, Dr. Cary, Sergeant C. Tennison, Chief Deputy Warden J. Marshal, Captain N. Dill, Underwood, D. Tepperman, D. Means, A. Garza, G. Rangel, P. Stockman, S. Issac, Officer G. Arroyo, Officer Hura, Officer Rawers, Officer Cabral, Officer M. Jones, Officer H. Cheema, Officer E. Duran, Officer R. Hulsey, Officer A. Mayo, Officer R. Garcia, Officer V. Santos, Officer H. McDowell, Officer Bennett, Officer Williams, Officer Castaneda, Sergeant M. Bremner, Sergeant S. Pina, Sergeant R. Pear, O. Madreno, Medical Technical Assistant John Doe, Lieutenant A. Diaz, Lieutenant H. Gadsden, Associate Warden M. Meske, Associate Warden Stockman, Warden A. Scribner, M. Kalvelage, J. Case, and C. Pliler.[1]  Plaintiff is seeking money damages and injunctive relief.

---

[1] M. Kalvelage, J. Case, and C. Pliler are named as defendants in the caption of the complaint but not in the section entitled "Parties."  It is plaintiff's responsibility to ensure the defendants named in the caption match with the defendants named in the complaint.

1       C.     <u>Plaintiff's Claims</u>

2          1.     <u>Summary of Plaintiff's Allegations</u>[2]

3       Plaintiff alleges that his right to due process was violated at the California Substance Abuse

4 Treatment Facility and State Prison-Corcoran (SATF) on May 3, 2000, when defendant Johnson took

5 disciplinary action against him without providing him with written notice of the charges against him.

6 Plaintiff alleges that for one-hundred eighty-four days, he was confined to his cell twenty-three hours

7 a day and deprived of religious services, work time credits, and contact visitation privileges.

8       Plaintiff alleges that on May 5, 2000, he filed an appeal grieving defendant Johnson's action.

9 Plaintiff alleges that defendants Lilly, John Doe, and B. Espinosa denied his appeal, leading to the

10 further violation of his due process rights.  In addition, plaintiff alleges that defendant Johnson's

11 participation in the resolution of his inmate appeal violated his right to due process.

12       Plaintiff alleges that on September 14, 2000, defendant Canton, via a Director's Level appeal

13 decision, notified the general population inmates at SATF that plaintiff had been transferred from

14 the general population at Calipatria State Prison to SATF, and instructed the general population

15 inmates to spread the word.  Plaintiff alleges he filed an inmate appeal in which he stated that the

16 inmates knew that he was a level-four inmate and that because SATF only housed level-four

17 protective custody inmates, his safety was endangered due to the stigma attached to being a

18 protective custody inmate.  Plaintiff alleges that an investigation revealed that plaintiff's placement

19 in protective custody was an error and revealed that defendant Flores had told general population

20 inmates that plaintiff had been housed in protective custody.  Plaintiff was subsequently transferred

21 from a sensitive needs yard, which houses protective custody inmates, to administrative segregation,

22 and plaintiff's case was referred to the Departmental Review Board[3] (DRB) with a recommendation

23 that plaintiff be placed in general population.

24 *///*

25

26          [2] Plaintiff's lengthy allegations are set forth in chronological order, with the claims stated at the conclusion

27 of the allegations.  Given the numerosity of plaintiff's claims, the court will follow plaintiff's format by first summarizing all of the allegations and then addressing each of plaintiff's claims.

28          [3] Identified as the Department Review Board by plaintiff.

Plaintiff alleges that the acting warden ordered that the divulgence of the protective custody information be included in the written recommendation to the DRB so that plaintiff's needs could be accurately assessed, but that defendants Adams and Atkins ignored the order and submitted a statement that there was only a minimal safety concern in returning plaintiff to general population. Plaintiff alleges that defendant Adams submitted an addendum circumventing the issue of defendants Canton and Flores's divulgence of critical information and standing by his recommendation that plaintiff be returned to general population, knowing that doing so would place plaintiff at significant risk of harm. Plaintiff alleges that he pursued his inmate appeal to the Director's Level of review, where it was denied by defendant Melching.

Plaintiff alleges that on June 8, 2001, defendants Lankford, Diggs, L'Etoile, and Alameda ordered plaintiff's transfer to California State Prison-Sacramento in retaliation for filing grievances and a petition for writ of habeas corpus. Plaintiff alleges that prior to the transfer, defendants Lankford and Diggs had threatened him with the retaliatory transfer if he did not withdraw his appeals.

Plaintiff alleges that on July 19, 2001, after being transferred to CSP-Sacramento, defendant Goodwin confiscated his legal and personal property for "transpacking" because plaintiff was being transferred back to SATF on the next bus. On July 27, 2001, plaintiff appeared before Institutional Classification Committee members defendants Burruel, Case, Vance, Cary, and Tennison for review. Plaintiff informed the committee that his property had been "transpacked" for transfer back to SATF. Plaintiff alleges that defendant Burruel informed him that only his property was being transferred to SATF, that none of this would be happening if plaintiff had not filed paperwork against them, and that by the time plaintiff's property got back to him, *if* it got back to him, plaintiff should have learned his lesson about the consequences of filing complaints and litigation against staff.

Plaintiff alleges that during the time he was separated from his property, he was in the summary judgment phase in case number 99-CV-1766 Ransom v. Small in the Southern District of California, and that a motion for summary judgment in favor of the defendants in that case was granted because plaintiff did not have his case number and was unable to file an amended brief in

///

4

opposition or a motion for an extension of time.  Plaintiff alleges that defendant Pliler was made aware of plaintiff's property transfer but did not intervene.

Plaintiff alleges that defendants Pliler and Rosario falsified a DRB referral to defendant Diggs, stating that plaintiff refused to program on either a general population yard or the sensitive needs yard at CSP-Sacramento and recommending that plaintiff be transferred to the Security Housing Unit (SHU) to serve an indeterminate term.  Plaintiff alleges that at no time had he been assigned to a general population yard or the sensitive needs yard, and that he was never issued a CDC 115 Serious Rules Violation Report charging him with refusing to program.

Plaintiff alleges that on January 10, 2002, defendants Lankford, Diggs, Kalvelage, and DeGroot granted the request to assess plaintiff with an indeterminate SHU term and ordered plaintiff's transfer to the SHU at CSP-Corcoran.  Plaintiff alleges that he does not meet the criteria for indeterminate SHU placement and that the assessment of an indeterminate SHU term and transfer to Corcoran SHU were done to retaliate against him for his litigation activities and inmate appeals.  Plaintiff alleges that defendant Doe, the Director of CDC, was placed on notice but failed to take any action.  Plaintiff alleges that he has now been in the SHU for approximately three years without every having been found guilty of an offense.

Plaintiff alleges that on January 28, 2002, four days after his arrival at CSP-Corcoran, he appeared before Institutional Classification Committee members defendants Marshal, Dill, Means, Garza, Rangel, and Underwood, who ordered plaintiff to be taken to the SHU to serve an indeterminate term, despite plaintiff's notice to them that he had not been issued his property, notice of any charges against him, or a copy of the DRB order.  Plaintiff subsequently appealed the denial of due process and defendant Stockman responded by giving plaintiff a copy of a CDC 128-B notification of hearing chrono, dated January 23, 2002.

After plaintiff's arrival at the SHU, he filed a request for a temporary restraining order against defendant Arroyo, who allowed plaintiff only a small amount of property and then refused to allow plaintiff access to or storage for his remaining legal property.  Plaintiff alleges that the United States District Court for the Southern District of California granted his request and issued an order allowing plaintiff to access of his property in order to identify, index, and store excess legal property in a

secure area.  Plaintiff alleges that defendant Arroyo disregarded the court's order, and told plaintiff that he was really going to "fuck him over" for getting the restraining order and if plaintiff complained to the court, plaintiff was going to regret the day he was born.  Plaintiff alleges that defendant Arroyo subsequently disposed of plaintiff's property without complying with the court's order or allowing plaintiff the mandated thirty days to send his property home.

Plaintiff alleges that on March 3, 2002, he submitted an emergency request to see a dentist because he was in pain due to a severe toothache.  On March 8, 2002, plaintiff's dental appointment and law library access were scheduled for the same time period.  While being escorted by defendants Hura and Rawers to his dental appointment, plaintiff was informed by defendant Cabral that he would have to choose between his dental appointment and going to the law library and that whichever one he did not choose would be rescheduled for the following week.  Plaintiff told defendant Cabral that he could not postpone either one because he was in severe pain but needed copies from the library to meet a pending deadline.  Defendant Cabral told plaintiff he could not have it both ways and directed defendants Hura and Rawers to take plaintiff to the law library.  Plaintiff alleges that he suffered for at least more seven weeks before being seen by the dentist, at which time his tooth had to be extracted.

Plaintiff alleges that on April 20, 2002, Officer Dalton came to his cell to pick up legal work for photocopying.  Officer Dalton subsequently returned without the documents and told plaintiff that Sergeant McClean had confiscated them.  Plaintiff asked for a receipt or the return of the paperwork, but Officer Dalton told him there was nothing he could do.

In order to gain the attention of Officer Dalton's superiors, plaintiff then covered up the door to his cell with a sheet, which blocked the inside of his cell from outside view.  Defendants Bremner and Diaz came to plaintiff's cell and told him to take down the sheet so they could see inside.  Plaintiff refused, saying that he would take it down when he got a receipt or return of his legal work, but did nothing that would have prevented defendants from taking down the sheet themselves.  Defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, and Pina returned to plaintiff's cell in full riot gear.  Defendant Bremner opened the food port door and defendant Diaz inserted a barricade removal device, which caused the sheet to fall to the floor.  Defendant Diaz then

emptied a can of pepper spray into the cell.  Plaintiff was ordered to disrobe, which he did, and defendant Bremner sprayed plaintiff's head and body with five cans of pepper spray as plaintiff turned in a circle as ordered.  Plaintiff was then removed from his cell by defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, and Garcia and hooded with a spit mask which covered plaintiff's entire head.  Plaintiff alleges that the practice of "chemical hooding" is intended to trap the pepper spray gasses and maximize asphyxiation.  Plaintiff requested that the hood be removed because he was having trouble breathing, but defendant Diaz refused, telling plaintiff that if he could talk, he could breathe.  Plaintiff alleges that he was vomiting and gagging in agony.  Plaintiff alleges that defendant Meske authorized defendants Bremner and Diaz's actions and looked on with defendants Duran, Jones, Cheema, Hulsey, Mayo, Pina, Madreno, Santos, and McDowell, none of whom took any action to prevent or stop the attack.  Plaintiff alleges that defendants Bremner, Diaz, Jones, Duran, Garcia, Cheema, Hulsey, Mayo, and Pina paraded plaintiff through the building section and sally port completely nude in front of male prisoners and female officers.  Plaintiff was then taken outside and the hood was removed.

Plaintiff alleges that defendant Madreno, a medical technical assistant, attempted to decontaminate him by using water from a garden hose, but defendant Diaz ordered that the water be turned off.  Plaintiff told defendants that he needed to be fully decontaminated but defendant Diaz told plaintiff that he "did not give a shit about jailhouse lawyers" and that if plaintiff did not like it, he would spray plaintiff's "black ass" again.  Plaintiff alleges that defendants Madreno, Meske, Jones, Duran, Garcia, Bremner, Cheema, Pina, Hulsey, and Mayo looked on without intervening.

Plaintiff was returned to his cell, which had been stripped bare and had not been decontaminated.  In addition, the water to the cell had been turned off, which prevented plaintiff from decontaminating himself or his cell.  During count at two o'clock a.m., plaintiff told defendant McDowell that he was burning up from the pepper spray and his water had been turned off.  Defendant McDowell told plaintiff that it was all part of his punishment and he was under instruction from defendant Diaz not to assist plaintiff.

At six o'clock a.m., plaintiff told defendants Bennett and Williams that his water was off, and that he was in pain and needed a shower to decontaminate.  Defendants told him they were under

orders not to assist plaintiff.  Plaintiff told them that the pain was excruciating and causing his heart to palpitate.  At around six-thirty a.m., defendants Bennett and Williams arrived back at his cell with a John Doe medical technical assistant.  Plaintiff stated that he was burning up, the fumes were unbearable, and he needed to be decontaminated.  Defendant Doe took plaintiff's pulse and blood pressure readings, and told plaintiff that although he was a bit exhilarated, there was nothing defendant could do and to put in a sick call slip.  Plaintiff alleges that he was allowed a two minute shower several days later, but the duration of the shower was insufficient and he was not provided with soap or other decontaminate.  Plaintiff alleges that he was not provided with any materials to decontaminate his cell, so he was again contaminated upon his return to his cell.  Plaintiff alleges that he was left in agony under these conditions for ten days before being allowed to decontaminate himself and his cell.

Plaintiff alleges that on October 10, 2002, a hearing to address his appeal concerning his wrongful detention in the SHU was scheduled.  While waiting outside the hearing room with defendants Bennett, Garcia, and Castaneda, plaintiff saw defendants Issac, Stockman, Gadsden, and Tepperman pointing at him from inside the hearing room and talking.  Defendant Issac then came out of the room and told plaintiff that they had decided that plaintiff would not be allowed to have his hearing unless he took out his dredlocks.  Plaintiff alleges that he told defendant that his religious convictions prevented him from removing his dredlocks.  Plaintiff was subsequently told by defendant Issac that his response constituted a refusal to follow a direct order and plaintiff was taken back to his cell by defendants Bennett, Garcia, and Castaneda.  Plaintiff alleges that he was discriminated against by defendants Issac, Stockman, Gadsden, and Tepperman on the basis of his religion. After appealing the issue, plaintiff was taken before a different committee panel on October 17, 2002, and provided with his hearing on his SHU retention.

On October 10, 2002, defendant Pear interviewed plaintiff on the ground that defendant had received information that plaintiff was planning to stage a demonstration against CDC.  Plaintiff confirmed the information and stated that on February 26, 2003, the "Three-Strike Backlash Campaign" would be launched, and prisoners would be called upon to lawfully resist CDC's forced double-celling practice.  Defendant Pear told plaintiff that defendant Scribner, the warden, did not

take kindly to prison activism and had ordered Pear to shut down plaintiff's efforts.  Plaintiff's

incoming and outgoing mail was thereafter flagged and forwarded to defendant Pear for censorship.

Numerous press releases and letters to the media and other outside organizations were forwarded to

defendant Pear, who issued plaintiff a CDC 115 Rules Violation Report for inciting on February 25,

2003.  Plaintiff alleges that his hearing on the charge, which should have been held within thirty

days, was delayed until July 30, 2003, by defendant Scribner.  At the hearing, plaintiff discovered

that defendant Pear had withheld all of his press releases and letters.  After reviewing the material,

the  hearing officer dismissed the charge, finding that plaintiff's campaign fell within CDC

guidelines and the First Amendment.

    2. <u>Events at SATF</u>

      a. <u>Defendants Johnson, Lilly, Espinosa, and John Doe</u>[4]

        1) <u>Due Process Claims</u>

  Plaintiff alleges that defendant Johnson violated his due process rights by disciplining him

without written notice or a hearing.  The Due Process Clause protects prisoners from being deprived

of liberty without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  In order to

state a cause of action for deprivation of procedural due process, a plaintiff must first establish the

existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the

Due Process Clause itself or from state law.  <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-68 (1983).  With

respect to liberty interests arising from state law, the existence of a liberty interest created by prison

regulations is determined by focusing on the nature of the deprivation.  <u>Sandin v. Conner</u>, 515 U.S.

472, 481-84 (1995).  Liberty interests created by prison regulations are limited to freedom from

restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life."  <u>Id</u>. at 484.

  Plaintiff's allegations do not establish the existence of a liberty interest entitling him to

procedural due process protections.  The conclusory allegation that plaintiff was confined to his cell

twenty-three hours a day and deprived of religious services, work time credits, and contact visitation

---

[4] A John Doe Appeals Coordinator was named in plaintiff's statement of his claims, but was not named as a defendant in the caption or the section entitled "Parties."

privileges does not demonstrate that plaintiff was deprived of a protected liberty interest.  For this reason, plaintiff's allegations fail to state a claim for relief against defendant Johnson for denial of due process.  In addition, to the extent that plaintiff is complaining that he was deprived of existing work time credits by defendant Johnson, as opposed to being prohibited from earning future work time credits, such a claim is barred until such time as plaintiff invalidates the result of the proceeding at which plaintiff was deprived of his time credits.  Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303, 1304 (2004).

With respect to the handling and resolution of plaintiff's inmate appeal grieving defendant Johnson's actions, "[a prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Defendants Johnson, Lilly, Espinosa, and Appeals Coordinator Doe's actions in responding to plaintiff's appeal, alone, cannot give rise to any claims for relief under section 1983 and plaintiff has not alleged any other facts that demonstrate that defendants violated his rights under federal law. Accordingly, plaintiff fails to state any claims upon which relief may be granted under section 1983 based on the handling and resolution of his appeal against defendant Johnson.

2)      Free Exercise Claim

Plaintiff's alleges that defendant Johnson's actions violated his First Amendment right to the free exercise of religion.  The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise

thereof. U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  The Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. Id.; McElyea v. Babbit, 833 F. 2d 196, 197 (9th Cir. 1987).  "In order to establish a free exercise violation, [plaintiff] must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith."  Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997).

The conclusory allegation that plaintiff was deprived of religious services for one-hundred eight-four days is insufficient to give rise to a claim for relief under section 1983 for violation of the Free Exercise Clause of the First Amendment.

3)      Eighth Amendment Claim

Plaintiff's alleges that defendant Johnson's actions violated his Eighth Amendment rights. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know of and disregard an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 835.

11

1    Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk,

2    or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Farmer, 511 U.S.

3    at 844-45.  Mere negligence on the part of the prison official is not sufficient to establish liability,

4    but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost v. Agnos,

5    152 F.3d at 1128; see also Daniels v. Williams, 474 U.S. 327, 330-32 (1986).

6           "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

7    Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8

8    (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive

9    to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme

10   deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."

11   Id. at 9 (citation omitted).  With respect to this type of claim, "[b]ecause routine discomfort is part

12   of the penalty that criminal offenders pay for their offenses against society, only those deprivations

13   denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis

14   of an Eighth Amendment violation." Id. (quotations and citations omitted).

15          Plaintiff's allegations do not support a finding that plaintiff was subjected to conditions so

16   grave that they rose to the level of an Eighth Amendment violation, Hudson, 503 U.S. at 9, or that

17   defendant Johnson acted with deliberate indifference by knowingly disregarding a substantial risk

18   to plaintiff.  Farmer, 511 U.S. at 835.  Accordingly, plaintiff fails to state an Eighth Amendment

19   claim against defendant Johnson.

20                          4)     IIED Claim

21          Plaintiff alleges a claim against defendant Johnson under California law for intentional

22   infliction of emotional distress (IIED).  The elements of an IIED claim are: (1) extreme and

23   outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

24   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

25   distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous

26   conduct.  Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing to Christensen v.

27   Superior Court, 54 Cal.3d 868 (1991)) (quotations omitted).  The court finds that plaintiff's

28   allegations simply fall short of supporting an actionable IIED claim against defendant Johnson.

5)    Negligence Claim

Plaintiff alleges a claim for relief against defendant Johnson for negligence.  A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission."  Cal. Gov't Code § 844.6(d) (West 2005).  "To establish negligence, a party must prove the following: (a) a *legal duty* to use due care; (b) a breach of such legal duty; (c) the breach as the *proximate* or *legal cause* of the resulting injury."  Hair v. State, 2 Cal. Rptr. 2nd  871, 875 (Cal. Ct. App. 1991) (citations omitted).  Plaintiff's conclusory allegation that defendant Johnson's actions contravened CDC policy is insufficient to state a claim for negligence.

b.    Defendants Canton, Melching, Flores, Adams, and Atkins

1)    Eighth Amendment Claim

Plaintiff alleges that the actions of defendants Canton, Melching, Flores, Adams, and Atkins violated his rights under the Eighth Amendment.  The court finds that plaintiff's allegations that defendants Canton, Flores, Adams, and Atkins divulged information about plaintiff that placed plaintiff's safety at risk and then minimized the significance of the risk to be sufficient to state a claim for relief under section 1983 against defendants for violation of the Eighth Amendment. However, defendant Melching's act of denying plaintiff's inmate appeal grieving the divulgence of the sensitive information does not provide a basis upon which to impose liability on defendant Melching under section 1983.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

c.    Defendants Lankford, Diggs, L'Etoile, and Alameda

1)    Retaliation Claim

Plaintiff alleges that defendants Lankford, Diggs, L'Etoile, and Alameda retaliated against him for litigating and filing grievances by transferring him to CSP-Sacramento.  Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

13

of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).  The court finds that plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against defendants Lankford, Diggs, L'Etoile, and Alameda for retaliation.

2)   <u>Eighth Amendment Claim</u>

Plaintiff alleges that defendants Lankford, Diggs, L'Etoile, and Alameda's actions also violated his rights under the Eighth Amendment.  This claim is without merit.  A transfer to another prison, even a less favorable one, does not rise to the level of a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment.  <u>Farmer</u>, 511 U.S. at 835; <u>Hudson</u>, 503 U.S. at 9.

d.   <u>Effect of Statute of Limitations on Claims Based on Events at SATF</u>

As set forth in subsection (C)(2), some of plaintiff's claims against staff at SATF are cognizable and some are not.  However, all of the events upon which plaintiff's claims against staff at SATF are based occurred in 2000 and 2001.

Federal law determines when a civil rights claim accrues.  <u>See</u> <u>Elliott v. City of Union City</u>, 25 F.3d 800, 801-802 (9th Cir. 1994).  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  <u>Kimes v. Stone</u>, 84 F.3d 1121, 1128 (9th Cir.1996).  Because section 1983 contains no specific statute of limitations, federal courts should borrow state statues of limitations for personal injury actions in section 1983 suits.  <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1985); <u>Torres v. City of Santa Ana</u>, 108 F.3d 224, 226 (9th Cir. 1997); <u>Vaughan v. Grijalva</u>, 927 F.2d 476, 478 (9th Cir. 1991).  At the time plaintiff's claim accrued, the applicable statute of limitations in California for section 1983 claims was one year.  Cal. Civ. Proc. Code § 340(3); <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004) (Cal. Civ. Proc. § 335.1, extending the statute of limitations from one year to two years, does not apply to claims that accrued prior to January 1, 2003).

In actions where the federal court borrows the state statute of limitation, the court should also borrow all applicable provisions for tolling the limitations period found in state law.  <u>See</u> <u>Hardin v. Straub</u>, 490 U.S. 536, 539 (1989).  Pursuant to the California Code of Civil Procedure section 352.1, ///

14

a two-year limit on tolling is imposed on prisoners.  Section 352.1 provides, in pertinent part, as follows:

> (a) If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Thus, incarcerated plaintiffs have three years from the date that the cause of action accrued in which to file suit, if the cause of action accrued while said plaintiff was incarcerated.

In this instance, plaintiff's claims against defendants Johnson, Lilly, Espinosa, and John Doe accrued in 2000 and plaintiff's claims against defendants Lankford, Diggs, L'Etoile, and Alameda accrued in 2001.  More than three years passed between the dates the claims accrued and the date plaintiff filed this action.  Thus, the claims appear to be barred by the statute of limitations.  Plaintiff may if he wishes show cause why the claims should not be dismissed, with prejudice, as time barred.

      3.     <u>Events at CSP-Sacramento</u>

      a.     <u>Defendants Goodwin, Burruel, Case, Vance, Cary, Tennyson, and Pliler</u>

      1)     <u>Retaliation Claim</u>

Plaintiff alleges that defendants Goodwin, Burruel, Case, Vance, Cary, Tennyson, and Pliler retaliated against him for litigating and filing grievances by separating plaintiff from his property and transferring the property back to SATF.  Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against Burruel, Case, Vance, Cary, Tennyson, and Pliler for retaliation.  However, plaintiff has not alleged any facts that support a claim that defendant Goodwin knew of or was otherwise involved in the decision to transfer plaintiff's property out of retaliation.  Plaintiff's allegation that defendant Goodwin was the one to confiscate his property and inform him that he was being transferred back to SATF is insufficient to support a claim that defendant Goodwin was involved in the plan to retaliate against plaintiff.

      2)     <u>Access to the Courts Claim</u>

Plaintiff alleges that during his separation from his property, he was unable to litigate his pending action and lost on a motion for summary judgment, resulting in a claim for denial of access

to the courts.  Inmates have a fundamental constitutional right of access to the courts.  <u>Lewis v.</u> <u>Casey</u>, 518 U.S. 343, 346 (1996).  The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions.  <u>Id</u>. at 354.  The State is not required to enable the inmate to discover grievances or to litigate effectively once in court.  <u>Id</u>.  An inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury.  <u>Id</u>. at 351.

The court finds that plaintiff's allegation that as a result of the retaliatory property transfer, plaintiff was unable to respond to a pending matter and summary judgment was granted against him as a result is sufficient to give rise to a claim for relief under section 1983 against defendants Burruel, Case, Vance, Cary, Tennyson, and Pliler.  However, as with the previous retaliation claim, plaintiff's allegation that defendant Goodwin was the one to confiscate his property and inform him that he was being transferred to SATF is insufficient to support a claim that defendant Goodwin denied plaintiff access to the courts.

3)   <u>Statute of Limitations</u>

Plaintiff's property was packed and shipped to SATF in 2001.  Based on plaintiff's failure to file suit within three years of the accrual of the claim, plaintiff's retaliation and access to the courts claims appear to be barred by the statute of limitations.  Plaintiff may if he wishes show cause why the claims should not be dismissed, with prejudice, as time barred.

b.   <u>Defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, Lankford, and Director Doe</u>

1)   <u>Retaliation Claim</u>

Plaintiff's allegations that, as a result of his continued efforts to appeal his transfer to and retention at CSP-Sacramento, defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford arranged for the assessment of an indeterminate SHU term and a transfer to Corcoran to serve that SHU term are sufficient to give rise to a retaliation claim.

2)   <u>Eighth Amendment Claim</u>

Plaintiff's allegations are insufficient to give rise to a claim for relief under the Eighth Amendment.  Plaintiff's allegations do not support a claim that he was subjected to a deprivation so

extreme that it rose to the level of an Eighth Amendment violation, <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992), or that defendants acted with "deliberate indifference to a substantial risk of serious harm" to plaintiff. <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

3)   <u>Due Process Claim</u>

Plaintiff alleges that he was assessed an indeterminate SHU term and transferred to Corcoran without due process of law.  Assuming that plaintiff has a protected liberty interest in remaining from an indeterminate SHU term, <u>see</u> <u>Wilkinson v. Austin</u>, 125 S.Ct. 2384 (2005), plaintiff has not alleged any facts that support a claim that he was deprived of his liberty interest without the procedural protections required under federal law.

Under federal law, due process requires only that prison officials "hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated," that prison officials "inform the prisoner of the charges against [him] or the reasons for considering segregation," and that the prisoner be allowed "to present his views." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1100-01 (9th Cir. 1986); <u>Garcia v. Kirkland</u>, No. C 05-0341 MMC (PR), 2005 WL 1656904, *2 (N.D.Cal. July 13, 2005); <u>Koch v. Lewis</u>, 216 F.Supp.2d at 1003; <u>Morris v. Cambra</u>, No. C 96-0334 SI, 1997 WL 811774, at *3 (N.D. Cal. Dec. 15, 1997); <u>Hart v. Cambra</u>, No C 96-0924 SI, 1997 WL 564059, at *4 (N.D. Cal. Aug. 22, 1997).  In addition, "there must be 'some evidence in the record' to support the decision to segregate the inmate," and this evidence "must have 'some indicia of reliability.'" <u>Koch</u>, 216 F.Supp.2d at 1003 (quoting <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985)).

Although plaintiff alleges that he had been neither charged with a rules violation nor found guilty of a charge, this is insufficient to demonstrate that plaintiff did not receive due process.  Some type of notice and some type of opportunity to be heard is required.  However, the notice does not necessarily have to be delivered via a CDC 115 and the opportunity to be heard does not necessarily have to be provided via a disciplinary hearing on a rules violation.[5]

Finally, although plaintiff alleges that defendants Pliler and Rosario falsified a DRB referral, this allegation alone is insufficient to rise to the level of a constitutional violation.  <u>See</u> <u>Hernandez</u>

---

[5] With respect to this particular claim against these particular defendants, the procedural protection of periodic review is not relevant.

v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987). The court will provide plaintiff with leave to amend this claim if plaintiff believes, in good faith, that he was deprived of a liberty interest without due process of law. Plaintiff is cautioned that his disagreement with the decision or his belief that it was unjustified is, without more, insufficient to state a claim. Defendants may deprive plaintiff of a liberty interest, even if plaintiff disagrees with the deprivation, as long as plaintiff is provided with the minimal due process protections required under federal law.

4)   Claims Against Defendant Director Doe

Defendant John Doe was the Director for the California Department of Corrections. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

In light of the fact that the Director of CDC worked at CDC headquarters in Sacramento, plaintiff's conclusory allegation that Doe was placed on notice but failed to take action is insufficient to support a claim that defendant Doe personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. To the extent that plaintiff is attempting to impose liability on defendant Doe because his staff responded to plaintiff's

inmate appeal at the Director's Level of review in Sacramento, plaintiff has previously been advised that the involvement in responding to an inmate appeal is not a basis upon which to impose liability under section 1983.

    4.    <u>Events at CSP-Corcoran</u>

    a.    <u>Defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman</u>

    1)    <u>Due Process Claim</u>

Plaintiff alleges that on January 28, 2002, four days after his transfer to CSP-Corcoran, he appeared before the Institutional Classification Committee members defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman for affirmation of his indeterminate SHU term. Plaintiff alleges that defendants violated his due process rights when they (1) failed to give him prior notice of the ICC disciplinary hearing, a copy of Title 15, and a copy of the DRB order, (2) falsified documents, and (3) detained plaintiff in the SHU.

Plaintiff's allegations are insufficient to give rise to a claim for relief against defendants for denial of due process. Plaintiff had already been assessed an indeterminate SHU term while at CSP-Sacramento, and plaintiff's description of the hearing as a "disciplinary" hearing is contradicted by plaintiff's allegation that he appeared before the ICC simply for affirmation of his SHU term. Based on these plaintiff's allegations, it does not appear that the ICC hearing was a pivotal hearing in the process such that plaintiff was owed all the procedural due process protections available. In segregating a prison for administrative or disciplinary reasons, notice and an opportunity to be heard is required, assuming there exists a protected liberty interest. There is no authority for the proposition that at every single step in the process, plaintiff is owed notice and an opportunity to be heard. Regardless, plaintiff's allegation that he was not provided with certain key documents is insufficient to establish a violation of federal due process. Prisoners are not entitled to "detailed written notice of charges, representation by counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." <u>Toussaint</u>, 801 F.2d at 1100-01.

///

The court recognizes that plaintiff believes he was deprived of his liberty without due process of law, and that plaintiff is attempting to demonstrate that throughout the events leading to his placement in the SHU at Corcoran on an indeterminate term, he tried to gain information from various defendants and tried to alert them to what he believes were errors. Plaintiff is most likely familiar with the various procedures that are followed for SHU placement. Therefore, the court suggests to plaintiff that in drafting his amended complaint, rather than using a scattershot approach in which plaintiff attempts to impose liability on everyone even remotely connected with plaintiff's SHU placement, plaintiff focus on the key hearing(s) at which he should have been provided with notice and an opportunity to be heard and set forth the facts he believes demonstrate that he was not provided with notice or an opportunity to be heard. As the court previously stated, plaintiff is not necessarily entitled to notice and an opportunity to be heard at each and every step along the way to SHU placement.

### 2)    Eighth Amendment Claim

Plaintiff has alleged no facts that support a claim that in affirming plaintiff's indeterminate SHU term, defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman acted with "deliberate indifference to a substantial risk of serious harm" to plaintiff. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Accordingly, plaintiff's allegations do not state a claim for relief for violation of the Eighth Amendment.

### b.    Defendant Arroyo

### 1)    Retaliation Claim

Plaintiff's allegation that defendant Arroyo disposed of plaintiff's property in retaliation for plaintiff's request for and obtainment of a restraining order concerning his property is sufficient to give rise to a cognizable retaliation claim under section 1983.

### c.    Defendants Hura, Rawers, and Cabral

### 1)    Eighth Amendment Dental Care Claim

Plaintiff alleges that defendants Hura, Rawers, and Cabral violated his rights under the Eighth Amendment by denying him access to a dentist. A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate

indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  The "deliberate

indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation

must be, in objective terms, "sufficiently serious."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)

(citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a

"sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct

undertaken for the very purpose of causing harm.  <u>Farmer v. Brennan</u>, 511 U.S. at 837.  A prison

official does not act in a deliberately indifferent manner unless the official "knows of and disregards

an excessive risk to inmate health or safety."  <u>Id</u>.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

<u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980), <u>citing</u> <u>Estelle</u>, 429 U.S. at

105-06.  Even gross negligence is insufficient to establish deliberate indifference to serious medical

needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).  The needless suffering of

pain may be sufficient to demonstrate further harm.  <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir.

2002).

The court finds plaintiff's allegations are sufficient to state a claim against defendant Cabral.

Forcing plaintiff to choose between a dental appointment and the law library is not a violation of

plaintiff's constitutional rights and had plaintiff chosen the law library over the dentist, no claim

against defendant Cabral would lie.  However, plaintiff alleges that when he told defendant Cabral

that he had a need for both the dentist and library access, defendant Cabral instructed defendants

Hura and Rawers to take plaintiff to the library rather than to the dental appointment that they had

been on their way to.  Plaintiff alleges that as a result of his missed appointment, he suffered severe

pain for at least seven weeks.  These allegations are sufficient to give rise to a claim for relief against

defendant Cabral.  However, plaintiff's allegations are insufficient to give rise to a claim against

defendants Hura and Rawers.  Defendants Hura and Rawers were simply the escorting officers and

followed Cabral's instruction to take plaintiff to the law library.  This is an insufficient basis upon

///

which to base a claim that defendants Hura and Rawers "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." <u>Farmer v. Brennan</u>, 511 U.S. at 837.

        d.   <u>Defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske</u>

### 1)     <u>Excessive Force Claim</u>

Plaintiff alleges that defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske used excessive force against him on April 20, 2002, and April 21, 2002, during which time plaintiff was pepper sprayed and hooded.[6]  The court finds that plaintiff's allegations are sufficient to give rise to an excessive force claim against these defendants.

### 2)     <u>Assault and Battery Claim</u>

Plaintiff alleges a state law claim for assault and battery based on the cell extraction incident. Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 240, 242 (West 2005); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988).  The court finds that plaintiff's allegations are sufficient to give rise to assault and battery claims against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske.

### 3)     <u>Privacy Violation Claims</u>

Plaintiff alleges that his right to privacy was violated when he was paraded around nude in front of other male inmates and female officers.  The Supreme Court has recognized, resident in the Fourteenth Amendment, a privacy interest in avoiding disclosure of personal matters, <u>Whalen v. Roe</u>, 429 U.S. 589, 599 (1977), although the Court "has not recognized that an interest in shielding one's naked body from public view should be protected under the rubric of the right of privacy . . . ." <u>Grummett v. Rushen</u>, 779 F.2d 491, 494 (9th Cir. 1985).  The interest in avoiding disclosure of personal matters "has been infrequently examined . . . [and] its contours remain less than clear." <u>Davis v. Bucher</u>, 853 F.2d 718, 719 (9th Cir. 1988).  Under Ninth Circuit law, prisoners retain a

---

[6] The incident started the night of April 20 and continued into the early morning hours of April 21.

1  limited right to bodily privacy. <u>Sepulveda v. Ramirez</u>, 967 F.2d 1413, 1415 (9th Cir. 1992);

2  <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 333 (9th Cir. 1988).  Accordingly, under Ninth Circuit

3  jurisprudence, plaintiff's allegation that he was paraded around nude is sufficient to give rise to a

4  claim for relief under section 1983 for violation of the right to bodily privacy.

5       Although plaintiff also alleges that the violation of his right to privacy violated his rights

6  under the Eighth Amendment, the court finds that plaintiff's allegation is insufficient to give rise to

7  a claim for relief under the Eighth Amendment.  The incident was not "sufficiently grave to form the

8  basis of an Eighth Amendment violation," <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (quotations

9  and citations omitted), and the conduct of the defendants did not rise to the level of "deliberate

10  indifference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

11                    4)    <u>Sexual Harassment and Humiliation Claims</u>

12      Plaintiff alleges that the act of parading him around nude gives rise to claims for relief under

13  California law for sexual harassment and humiliation.  Plaintiff has not provided a legal basis for

14  either claim.  The court is unaware of any authority for the proposition that sexual harassment and

15  humiliation, generally, give rise to common law tort claims and plaintiff has provided none.  In order

16  to pursue such claims, plaintiff must provide the basis for each claim, under either common law or

17  statutory law.

18                    5)    <u>IIED Claim</u>

19      Plaintiff alleges an IIED claim based on the incident in which he was paraded around nude.

20  The court finds that plaintiff's allegations are sufficient to state a claim for relief under state law for

21  the intentional infliction of emotional distress.

22           e.    <u>Defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo,
                   Garcia, Pina, Madreno, Santos, McDowell, Meske, Bennett,</u>
23           <u>Williams, and MTA Doe</u>

24                    1)    <u>Medical Care Claim</u>

25      The court finds that plaintiff's allegations that he had a medical need for pepper spray

26  decontamination, but defendants failed to decontaminate him or allow him access to a source where

27  he could be decontaminated, and that he suffered great pain as a result are sufficient to give rise to

28  a claim for relief under section 1983 for violation of the Eighth Amendment.

2)    Negligence Claim

Plaintiff's allegations are also sufficient to give rise to a negligence claim under state law.

f.    Defendants Bennett, Garcia, Castaneda, Issac, Stockman, Gadsden, and Tepperman

1)    Discrimination Claim

Plaintiff alleges that defendants' refusal to conduct his scheduled hearing on his appeal unless he removed his dredlocks constituted "discrimination." The court construes plaintiff's claim to be one for violation of the Equal Protection Clause of the Fourteenth Amendment.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren, 152 F.3d at 1194.

Plaintiff's allegations are insufficient to give rise to a claim for relief. Defendants' refusal to provide him with his scheduled hearing because he did not do what they wanted him to do, alone, is insufficient to support a claim that plaintiff was intentionally discriminated against based on his race, religion, or other reason. With respect to defendants Bennett, Garcia, and Castanada, no claim lies even if plaintiff is able to allege facts supporting a claim that he was discriminated against. Defendants Bennett, Garcia, and Castanada were the officers assigned to escort plaintiff to and from his hearing. Their mere presence during the incident in which plaintiff's hearing was cancelled does not provide a basis upon which to impose liability on them for violating plaintiff's constitutional rights.

2)      Conspiracy Claim

In the context of conspiracy claims brought pursuant to section 1983, such a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy between defendants.  Further, plaintiff has not alleged facts demonstrating that defendants violated his constitutional rights.  In order to state a cognizable claim for relief for conspiracy, plaintiff must establish that defendants conspired to violate an underlying constitutional right.

g.      Defendants Pear and Scribner

1)      Retaliation Claim

Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against defendants Pear and Scribner for retaliating against plaintiff for prison activism by censoring his mail and delaying his disciplinary hearing approximately four months.

2)      Mail Censorship Claim

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) only as test relates to *incoming mail* - Turner test applies to incoming mail). Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against defendants Pear and Scribner for impermissibly infringing on his First Amendment right to send mail.

///

1

3)    Harassment Claim

2         Plaintiff alleges a claim for relief under state law for harassment.  As previously set forth,

3    "harassment" in and of itself is not a claim under California law.  Plaintiff must provide the legal

4    basis for the claim, either common law or statutory.

5         D.    Conclusion

6         The court has screened plaintiff's complaint and finds that the following claims are

7    cognizable:  (1) an Eighth Amendment failure-to-protect claim against defendants Canton, Flores,

8    Adams, and Atkins; (2) a retaliation claim against defendants Lankford, Diggs, L'Etoile, and

9    Alameda; (3) a retaliation claim against defendants Burruel, Case, Vance, Cary, Tennyson, and

10   Pliler; (4) an access to the courts claim against defendants Burruel, Case, Vance, Cary, Tennyson,

11   and Pliler; (5) a retaliation claim against defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and

12   Lankford; (6) a retaliation claim against defendant Arroyo; (7) an Eighth Amendment medical care

13   claim against defendant Cabral; (8) an Eighth Amendment excessive force claim against defendants

14   Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell,

15   and Meske; (9) a state law assault and battery claim against defendants Bremner, Diaz, Jones,

16   Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (10) a right

17   to privacy claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia,

18   Pina, Madreno, Santos, McDowell, and Meske; (11) a state law IIED claim against defendants

19   Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell,

20   and Meske; (12) an Eighth Amendment medical care claim against defendants Bremner, Diaz, Jones,

21   Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, Meske, Bennett,

22   Williams, and MTA Doe; (13) a state law negligence claim against defendants Bremner, Diaz, Jones,

23   Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, Meske, Bennett,

24   Williams, and MTA Doe; (14) a retaliation claim against defendants Pear and Scribner; and (15) a

25   First Amendment mail censorship claim against defendants Pear and Scribner.  However, claims 1

26   through 4 appear to be barred by the statute of limitations.  If plaintiff opts to amend his complaint,

27   plaintiff may address the issue of timeliness of his claims.

28   ///

26

The court further finds that the following claims are not cognizable: (1) due process claims against defendants Johnson, Lilly, Espinosa, and Appeals Coordinator Doe; (2) a free exercise claim against defendant Johnson; (3) an Eighth Amendment conditions-of-confinement claim against defendant Johnson; (4) a state law IIED claim against defendant Johnson; (5) a state law negligence claim against defendant Johnson; (6) an Eighth Amendment conditions-of-confinement claim against defendant Melching; (7) an Eighth Amendment conditions-of-confinement claim against defendants Lankford, Diggs, L'Etoile, and Alameda; (8) a retaliation claim against Goodwin; (9) an access to the courts claim against defendant Goodwin; (9) an Eighth Amendment conditions-of-confinement claim against defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford; (10) a due process claim against defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford; (11) a supervisory liability claim against Director Doe; (12) a due process claim against defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman; (13) an Eighth Amendment conditions-of-confinement claim against defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman; (14) an Eighth Amendment medical care claim against defendants Hura and Rawers; (15) state law sexual harassment and humiliation claims against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (16) an equal protection claim against defendants Bennett, Garcia, Castaneda, Issac, Stockman, Gadsden, and Tepperman; (17) a conspiracy claim against Bennett, Garcia, Castanada, Issac, Stockman, Gadsden, and Tepperman; and (18) a state law harassment claim against defendants Pear and Scribner.

If plaintiff does not wish to file an amended complaint and wishes to proceed only on his claims that the court found to be cognizable and not barred by the statute of limitations, plaintiff may so notify the court in writing. The court will then issue Findings and Recommendations recommending that the remaining claims and defendants be dismissed from this action, and will forward plaintiff summonses and USM-285 forms to fill out and return to the court. Upon receipt of these documents, the court will direct the United States Marshal to initiate service of process on defendants.

///

1    In the event that plaintiff does wish to amend his complaint, plaintiff is advised Local Rule

2  15-220 requires that an amended complaint be complete in itself without reference to any prior

3  pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux

4  v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original

5  pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an

6  original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

7    If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

8  complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy,

9  625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named

10  defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some

11  affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v.

12  Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy,

13  588 F.2d 740, 743 (9th Cir. 1978).

14    Based on the foregoing, it is HEREBY ORDERED that:

15    1.    The Clerk's Office shall send plaintiff a civil rights complaint form;

16    2.    Within **thirty (30) days** from the date of service of this order, plaintiff must either:

17       a.    File an amended complaint curing the deficiencies identified by the court in

18          this order, or

19       b.    Notify the court in writing that he does not wish to file an amended complaint

20          and wishes to proceed only on his cognizable, timely-filed claims; and

21    3.    If plaintiff fails to comply with this order, this action will be dismissed for failure to

22          obey a court order.

23  IT IS SO ORDERED.

24  **Dated:    August 1, 2005**          **/s/ Lawrence J. O'Neill**
    b9ed48                    UNITED STATES MAGISTRATE JUDGE

25

26

27

28