# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM, | CASE NO. 1:05-cv-00086-OWW-NEW (DLB) PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING AMENDED COMPLAINT BE SERVED AS TO SOME CLAIMS, AND RECOMMENDING DISMISSAL OF OTHER CLAIMS, WITH PREJUDICE |
| v. | |
| M. JOHNSON, et al., | |
| Defendants. | (Doc. 8) |
| | OBJECTION, IF ANY, DUE WITHIN THIRTY DAYS |
| _____/ | |

I.      Screening Order

      A.      Screening Requirement

Plaintiff Bryan E. Ransom ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on January 21, 2005.  On August 2, 2005, the court issued an order requiring plaintiff to either file an amended complaint or notify the court of his willingness to proceed only on the claims found to be cognizable by the court.  Plaintiff filed an amended complaint on August 30, 2005.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

1

1   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

2   dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

3   claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

4          "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

5   exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S.

6   506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and

7   plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).

8   "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the

9   grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  A court may dismiss a complaint only

10  if it is clear that no relief could be granted under any set of facts that could be proved consistent with

11  the allegations.  Id. at 514.  "'The issue is not whether a plaintiff will ultimately prevail but whether

12  the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of

13  the pleadings that a recovery is very remote and unlikely but that is not the test.'"  Jackson v. Carey,

14  353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also

15  Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the

16  opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir.

17  2001))).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."

18  Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights

19  complaint may not supply essential elements of the claim that were not initially pled."  Bruns v. Nat'l

20  Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d

21  266, 268 (9th Cir. 1982)).

22          B.      Plaintiff's Claims

23          The events at issue in the instant action allegedly occurred at the California Substance Abuse

24  Treatment Facility and State Prison-Corcoran (SATF), California State Prison-Sacramento, and

25  California State Prison-Corcoran.  Plaintiff names the following fifty-two individuals as defendants:

26  Captain M. Johnson, Sergeant P. Flores, Warden D. Adams, J. Atkinson, D. Lankford, J. Diggs, E.

27  L'Etoile, E. Alameda, B. DeGroot, Chief Deputy Warden Burruel, Chief Deputy Warden Rosario,

28

Counselor C. Case,[1] Captain Vance, Dr. Cary, Sergeant C. Tennison, Chief Deputy Warden J. Marshal, Captain N. Dill, Underwood, D. Tepperman, D. Means, A. Garza, G. Rangel, P. Stockman, S. Issac, Officer G. Arroyo, Officer Cabral, Officer M. Jones, Officer H. Cheema, Officer E. Duran, Officer R. Hulsey, Officer A. Mayo, Officer R. Garcia, Officer V. Santos, Officer H. McDowell, Officer Bennett, Officer Williams, Officer Castaneda, Sergeant M. Bremner, Sergeant S. Pina, Sergeant R. Pear, O. Madreno, Medical Technical Assistant John Doe, Lieutenant A. Diaz, Lieutenant H. Gadsden, Associate Warden M. Meske, Associate Warden D. Ortiz, Associate Warden Stockman, Warden A. Scribner, M. Kalvelage, C. Pliler, Appeals Coordinator John Doe, and P. Canton.  Plaintiff is seeking money damages and injunctive relief.

    C.    <u>Plaintiff's Claims</u>

        1.    <u>Events at SATF</u>

            a.    <u>Defendant Johnson</u>

Plaintiff alleges on May 3, 2000, at the California Substance Abuse Treatment Facility and State Prison-Corcoran (SATF), defendant Johnson held a disciplinary hearing on the charge against plaintiff for failing to comply with the grooming standards, without plaintiff being present and without providing plaintiff with written notice of the charges against him.  As a result, plaintiff was placed on Work/Privilege Group C, which prevented plaintiff from earning work credits, from attending religious services, and from having contact visitation.  Plaintiff, a Muslim, alleges that he was unable to attend twenty-six communal prayer services, which violated a major tenant of his religion.  Plaintiff alleges defendant's actions violated his rights under the Due Process Clause and the Free Exercise Clause.

            1)    <u>Due Process Claim</u>

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006). "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." <u>Sweaney v. Ada</u>

---

[1] Identified as J. Case in the caption.

1  County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted.)  "To the extent

2  that the violation of a state law amounts to the deprivation of a state-created interest that reaches

3  beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

4       The Due Process Clause protects against the deprivation of liberty without due process of

5  law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to invoke the protection of the Due

6  Process Clause, a plaintiff must first establish the existence of a liberty interest for which the

7  protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state

8  law.  Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005).  The Due Process Clause itself does not

9  confer on inmates a liberty interest in avoiding "more adverse conditions of confinement."

10  Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Under state law, the

11  existence of a liberty interest created by prison regulations is determined by focusing on the nature

12  of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Liberty interests created by state

13  law are "generally limited to freedom from restraint which . . . imposes atypical and significant

14  hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515

15  U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995); Myron v. Terhune, No. 04-15770, 2007 WL 400759,

16  at *1 (9th Cir. Feb. 7, 2007).

17       Plaintiff does not have a protected liberty interest in earning work time credits, in

18  participating in communal prayer service, or in contact visitation.  Sandin, 515 U.S. at 484; Myron,

19  2007 WL 400759, at *1; Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam); Casey

20  v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993); Toussaint v. McCarthy, 801 F.2d 1080, 1094-95, 1113-

21  114 (9th Cir. 1986).  Because plaintiff has not alleged the existence of a protected liberty interest,

22  he may not pursue a claim for relief under section 1983 against defendant Johnson for denial of due

23  process.  The court recommends that this claim be dismissed, with prejudice.

24                      2)     Free Exercise Claim

25       The First Amendment to the United States Constitution provides that Congress shall make

26  no law respecting the establishment of religion, or prohibiting the free exercise thereof.  U.S. Const.,

27  amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment

28  rights, including the right to free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342,

348 (1987).  The Court has also recognized that limitations on a prisoner's free exercise rights arise

from both the fact of incarceration and from valid penological objectives.  Id.; McElyea v. Babbit,

833 F. 2d 196, 197 (9th Cir. 1987).  "In order to establish a free exercise violation, [plaintiff] must

show the defendants burdened the practice of his religion by preventing him from engaging in

conduct mandated by his faith."  Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).

Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983

against defendant Johnson for allegedly violating the Free Exercise Clause of the First Amendment.

Fed. R. Civ. P. 8(a).

### b.    Defendants Canton, Flores, Adams, and Atkins

Plaintiff alleges that on September 14, 2000, defendant Canton notified the general

population inmates at SATF that plaintiff had been transferred from the general population at

Calipatria State Prison to SATF, and instructed the general population inmates to spread the word.

Plaintiff alleges he filed an inmate appeal in which he stated that the inmates knew he was a level-

four inmate and because SATF at that time only housed level-four protective custody inmates, his

safety was endangered due to the stigma attached to being a protective custody inmate.  Plaintiff

alleges that an investigation revealed that plaintiff's placement in protective custody was an error,

and that defendant Flores had told general population inmates that plaintiff had been housed in

protective custody.  Plaintiff was subsequently transferred from a sensitive needs yard, which houses

protective custody inmates, to administrative segregation, and plaintiff's case was referred to the

Departmental Review Board[2] (DRB) with a recommendation that plaintiff be placed in general

population.

Plaintiff alleges that the acting warden ordered that the divulgence of the protective custody

information be included in the written recommendation to the DRB so that plaintiff's needs could

be accurately assessed, but that defendants Adams and Atkins ignored the order and submitted a

statement that there was only a minimal safety concern in returning plaintiff to general population.

Plaintiff alleges that defendant Adams submitted an addendum circumventing the issue of defendants

---

[2] Identified as the Department Review Board by plaintiff.

1   Canton and Flores's divulgence of critical information and standing by his recommendation that

2   plaintiff be returned to general population, knowing that doing so would place plaintiff at significant

3   risk of harm.

4   1)   Eighth Amendment Claim

5   Plaintiff alleges that the actions of defendants Canton, Flores, Adams, and Atkins violated

6   his rights under the Eighth Amendment.  Although prison conditions may be restrictive and harsh,

7   prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

8   personal safety.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Toussaint v. McCarthy, 801 F.2d

9   1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner

10  alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable

11  only if they acted with "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos,

12  152 F.3d 1124, 1128 (9th Cir. 1998).  The court finds that plaintiff's allegations that defendants

13  Canton, Flores, Adams, and Atkins divulged information about plaintiff that placed plaintiff's safety

14  at risk and then minimized the significance of the risk to be sufficient to state a claim for relief under

15  section 1983 against defendants for violation of the Eighth Amendment.  Fed. R. Civ. P. 8(a).

16  c.   Defendants Lankford, Diggs, L'Etoile, and Alameda

17  Plaintiff alleges that on June 8, 2001, defendants Lankford, Diggs, L'Etoile, and Alameda

18  ordered plaintiff's transfer to California State Prison-Sacramento in retaliation for filing grievances

19  and a petition for writ of habeas corpus.  Plaintiff alleges that prior to the transfer, defendants

20  Lankford and Diggs had threatened him with the retaliatory transfer if he did not withdraw his

21  appeals.

22  1)   Retaliation Claim

23  Plaintiff alleges that defendants Lankford, Diggs, L'Etoile, and Alameda retaliated against

24  him for litigating and filing grievances by transferring him to CSP-Sacramento.  Allegations of

25  retaliation against a prisoner's First Amendment rights to speech or to petition the government may

26  support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also

27  Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th

28  Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five

1    basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

2    because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

3    of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

4    correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  The court finds that

5    plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against

6    defendants Lankford, Diggs, L'Etoile, and Alameda for retaliation.  Fed. R. Civ. P. 8(a).

7             2.     Events at CSP-Sacramento

8                 a.     Defendants Burruel, Case, Vance, Cary, Tennyson, and Pliler

9    Plaintiff alleges that on July 19, 2001, after being transferred to CSP-Sacramento, Officer

10    Goodwin confiscated his legal and personal property for "transpacking" and stated that plaintiff was

11    being transferred back to SATF on the next bus.  On July 27, 2001, plaintiff appeared before

12    Institutional Classification Committee members defendants Burruel, Case, Vance, Cary, and

13    Tennison for review.  Plaintiff informed the committee that his property had been "transpacked" for

14    transfer back to SATF.  Plaintiff alleges that defendant Burruel informed him that only his property

15    was being transferred to SATF, that none of this would be happening if plaintiff had not filed

16    paperwork against them, and that by the time plaintiff's property got back to him, *if* it got back to

17    him, plaintiff should have learned his lesson about the consequences of filing complaints and

18    litigation against staff.

19    Plaintiff alleges that his property was not returned until September 26, 2001, and during that

20    time he was in the summary judgment phase in case number 99-CV-1766 Ransom v. Small in the

21    Southern District of California.  Plaintiff alleges that defendants' motion for summary judgment was

22    granted because plaintiff did not have his case number and was unable to file an amended brief in

23    opposition or a motion for an extension of time.  Plaintiff alleges that defendant Pliler was made

24    aware of plaintiff's property transfer but did not intervene.

25            1)     Retaliation Claim

26    Plaintiff alleges that defendants Burruel, Case, Vance, Cary, Tennyson, and Pliler retaliated

27    against him for litigating and filing grievances by separating plaintiff from his property and

28    transferring the property back to SATF.  Plaintiff's allegations are sufficient to give rise to a claim

1   for relief under section 1983 against Burruel, Case, Vance, Cary, Tennyson, and Pliler for retaliation.

2   Fed. R. Civ. P. 8(a).

3                    2)    Access to the Courts Claim

4           Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518

5   U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996). The right is limited to direct criminal appeals, habeas

6   petitions, and civil rights actions. Id. at 354, 2181-82. Claims for denial of access to the courts may

7   arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking

8   access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking

9   claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). To prevail

10  on a claim, the plaintiff must show that he suffered an actual injury by being shut out of court. Id.

11  at 415, 2187; Lewis, 518 U.S. at 351, 2180.

12          Plaintiff's allegation that as a result of the retaliatory property transfer, plaintiff was unable

13  to respond to a pending matter and summary judgment was granted against him as a result is

14  sufficient to give rise to a claim for relief under section 1983 against defendants Burruel, Case,

15  Vance, Cary, Tennyson, and Pliler for denial of access to the courts. Fed. R. Civ. P. 8(a).

16                  b.    Defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford

17          Plaintiff alleges that defendants Pliler and Rosario falsified a DRB referral to defendant

18  Diggs, stating that plaintiff refused to program on either a general population yard or the sensitive

19  needs yard at CSP-Sacramento and recommending that plaintiff be transferred to the Security

20  Housing Unit (SHU) to serve an indeterminate term. Plaintiff alleges that at no time had he been

21  assigned to a general population yard or the sensitive needs yard, and that he was never issued a

22  CDC 115 Serious Rules Violation Report charging him with refusing to program.

23          Plaintiff alleges that on January 10, 2002, defendants Lankford, Diggs, Kalvelage, and

24  DeGroot granted the request to assess plaintiff with an indeterminate SHU term and ordered

25  plaintiff's transfer to the SHU at CSP-Corcoran. Plaintiff alleges that he was not provided with

26  notice or an opportunity to be heard, that he does not meet the criteria for indeterminate SHU

27  placement, and that the assessment of an indeterminate SHU term and transfer to Corcoran SHU

28  were done to retaliate against him for his litigation activities and inmate appeals.

1) <u>Retaliation Claim</u>

Plaintiff's allegations that, as a result of his continued efforts to appeal his transfer to and retention at CSP-Sacramento, defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford arranged for the assessment of an indeterminate SHU term and a transfer to Corcoran to serve that SHU term are sufficient to give rise to a retaliation claim.  Fed. R. Civ. P. 8(a).

2) <u>Due Process Claim</u>

Plaintiff's allegations are sufficient to give rise to a claim for relief against defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford  under section 1983 for the assessment of an indeterminate SHU term without due process of law.  <u>Wilkinson v. Austin</u>, 125 S.Ct. 2384, 2394-95 (2005); <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).  Fed. R. Civ. P. 8(a).

3. <u>Events at CSP-Corcoran</u>

a. <u>Defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman</u>

Plaintiff alleges that on January 28, 2002, four days after his arrival at CSP-Corcoran, he appeared before Institutional Classification Committee members defendants Marshal, Dill, Means, Garza, Rangel, and Underwood for confirmation of his indeterminate SHU term.  Plaintiff alleges he notified defendants that the SHU term was illegal because he had not been convicted of a disciplinary violation and was not a gang member.  Plaintiff alleges that he notified defendants he had not been given notice of the hearing, issued any documentation, or issue his property to prepare.  Plaintiff's request to postpone the hearing was denied.  Plaintiff alleges defendants engaged in a cover-up by falsely documenting that he had been given notice of the hearing on January 23, 2002, despite the fact that plaintiff did not arrive at the prison until January 24, 2002.

1) <u>Due Process Claim</u>

Plaintiff's allegations are insufficient to give rise to a claim for relief against defendants for denial of due process.  The court previously assumed that plaintiff had a protected liberty interest in remaining free from the SHU.  To the extent the assessment of an indeterminate SHU term occurred without due process and violated plaintiff's constitutional rights, the violation occurred when plaintiff was assessed the indeterminate SHU term at CSP-Sacramento.  The court

recommends that plaintiff's due process claim against defendants Marshal, Dill, Means, Garza, Rangel, Underwood, and Stockman be dismissed, with prejudice.

### b.   Defendant Arroyo

After plaintiff's arrival at the SHU, he filed a request for a temporary restraining order against defendant Arroyo, who allowed plaintiff only a small amount of property and then refused to allow plaintiff access to or storage for his remaining legal property.  Plaintiff alleges that the United States District Court for the Southern District of California granted his request and issued an order allowing plaintiff to access of his property in order to identify, index, and store excess legal property in a secure area.  Plaintiff alleges that defendant Arroyo disregarded the court's order, and told plaintiff that he was really going to "fuck him over" for getting the restraining order and if plaintiff complained to the court, plaintiff was going to regret the day he was born.  Plaintiff alleges that defendant Arroyo subsequently disposed of plaintiff's unissued property without complying with the court's order or allowing plaintiff the mandated thirty days to send his property home.

#### 1)   Retaliation Claim

Plaintiff's allegation that defendant Arroyo disposed of plaintiff's property in retaliation for plaintiff's request for and obtainment of a restraining order concerning his property is sufficient to give rise to a cognizable retaliation claim under section 1983.  Fed. R. Civ. P. 8(a).

### c.   Defendant Cabral

Plaintiff alleges that on March 3, 2002, he submitted an emergency request to see a dentist because he was in pain due to a severe toothache.  On March 8, 2002, plaintiff's dental appointment and law library access were scheduled for the same time period.  While being escorted by Officers Hura and Rawers to his dental appointment, plaintiff was informed by defendant Cabral that he would have to choose between his dental appointment and going to the law library and that whichever one he did not choose would be rescheduled for the following week.  Plaintiff told defendant Cabral that he could not postpone either one because he was in severe pain but needed copies from the library to meet a pending deadline.  Defendant Cabral told plaintiff he could not have it both ways and directed Officers Hura and Rawers to take plaintiff to the law library.  Plaintiff
///

10

1  alleges that he suffered for at least more seven weeks before being seen by the dentist, at which time
2  his tooth had to be extracted.

3         1)     Eighth Amendment Dental Care Claim

4      A prisoner's claim of inadequate medical care does not rise to the level of an Eighth
5  Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized
6  measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in
7  doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296
8  F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately
9  indifferent manner unless the official "knows of and disregards an excessive risk to inmate health
10 or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested
11 "when prison officials deny, delay or intentionally interfere with medical treatment," or in the
12 manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050,
13 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136
14 (9th Cir. 1997) (en banc).

15     The court finds plaintiff's allegations are sufficient to state a claim against defendant Cabral.
16 Fed. R. Civ. P. 8(a).  Forcing plaintiff to choose between a dental appointment and the law library
17 is not a violation of plaintiff's constitutional rights and had plaintiff chosen the law library over the
18 dentist, no claim against defendant Cabral would lie.  However, plaintiff alleges that when he told
19 defendant Cabral that he had a need for both the dentist and library access, defendant Cabral
20 instructed defendants Hura and Rawers to take plaintiff to the library rather than to the dental
21 appointment that they had been on their way to.  Plaintiff alleges that as a result of his missed
22 appointment, he suffered severe pain for at least seven weeks.  These allegations are sufficient to
23 give rise to a claim for relief against defendant Cabral.  Id.

24        2)     I.I.E.D. Claim

25     Plaintiff alleges that defendant Cabral's actions also constituted the tort of intentional
26 infliction of emotional distress under California law.  The elements of intentional infliction of
27 emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of
28 causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

11

suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. <u>Sabow v. United States</u>, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing to <u>Christensen v. Superior Court</u>, 54 Cal.3d 868 (1991)) (quotations omitted). The court finds that plaintiff's allegations do not support a claim for relief for IIED and recommends dismissal of the claim, with prejudice.

                  d.    <u>Defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske</u>

Plaintiff alleges that on April 20, 2002, Officer Dalton came to his cell to pick up legal work for photocopying. Officer Dalton subsequently returned without the documents and told plaintiff that Sergeant McClean had confiscated them. Plaintiff asked for a receipt or the return of the paperwork, but Officer Dalton told him there was nothing he could do.

In order to gain the attention of Officer Dalton's superiors, plaintiff then covered up the door to his cell with a sheet, which blocked the inside of his cell from outside view. Defendants Bremner and Diaz came to plaintiff's cell and told him to take down the sheet so they could see inside. Plaintiff refused, saying that he would take it down when he got a receipt or return of his legal work, but did nothing that would have prevented defendants from taking down the sheet themselves.

Defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, and Pina returned to plaintiff's cell in full riot gear. Defendant Bremner opened the food port door and defendant Diaz inserted a barricade removal device, which caused the sheet to fall to the floor. Defendant Diaz then emptied a can of pepper spray into the cell. Plaintiff was ordered to disrobe, which he did, and defendant Bremner sprayed plaintiff's head and body with five cans of pepper spray as plaintiff turned in a circle as ordered. Plaintiff was then removed from his cell by defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, and Garcia, and hooded with a spit mask which covered plaintiff's entire head. Plaintiff alleges that the practice of "chemical hooding" is intended to trap the pepper spray gasses and maximize asphyxiation. Plaintiff requested that the hood be removed because he was having trouble breathing, but defendant Diaz refused, telling plaintiff that if he could talk, he could breathe. Plaintiff alleges that he was vomiting and gagging in agony. Plaintiff alleges that defendant Meske authorized defendants Bremner and Diaz's actions and looked on with

defendants Duran, Jones, Cheema, Hulsey, Mayo, Pina, Madreno, Santos, and McDowell, none of whom took any action to prevent or stop the attack.  Plaintiff alleges that defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske paraded plaintiff through the building section and sally port completely nude in front of male prisoners and female officers.  Plaintiff was then taken outside and the hood was removed.

### 1)      Excessive Force Claim

Plaintiff alleges that defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske used excessive force against him on April 20, 2002, and April 21, 2002, during which time plaintiff was pepper sprayed and hooded.[3]  The court finds that plaintiff's allegations are sufficient to give rise to an excessive force claim against these defendants.  Fed. R. Civ. P. 8(a).

### 2)      Assault and Battery

Plaintiff alleges a claim for relief for assault and battery.  Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 240, 242 (West 2006); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988).  The court finds that plaintiff's allegations are sufficient to give rise to assault and battery claims against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske.  Fed. R. Civ. P. 8(a).

### 3)      Privacy Violation Claims

Plaintiff alleges that his right to privacy was violated when he was paraded around nude in front of other male inmates and female officers.  The Supreme Court has recognized, resident in the Fourteenth Amendment, a privacy interest in avoiding disclosure of personal matters, Whalen v. Roe, 429 U.S. 589, 599 (1977), although the Court "has not recognized that an interest in shielding one's naked body from public view should be protected under the rubric of the right of privacy . . . ."  Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir. 1985).  The interest in avoiding disclosure

_____

[3] The incident started the night of April 20 and continued into the early morning hours of April 21.

of personal matters "has been infrequently examined . . . [and] its contours remain less than clear." Davis v. Bucher, 853 F.2d 718, 719 (9th Cir. 1988). Under Ninth Circuit law, prisoners retain a limited right to bodily privacy. Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992); Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988). Accordingly, under Ninth Circuit jurisprudence, plaintiff's allegation that he was paraded around nude is sufficient to give rise to a claim for relief under section 1983 for violation of the right to bodily privacy against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske . Fed. R. Civ. P. 8(a).

Although plaintiff also alleges that the violation of his right to privacy violated his rights under the Eighth Amendment, the court finds that plaintiff's allegation is insufficient to give rise to a claim for relief under the Eighth Amendment. The incident was not "sufficiently grave to form the basis of an Eighth Amendment violation," Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quotations and citations omitted), and the conduct of the defendants did not rise to the level of "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The court recommends this claim be dismissed, with prejudice.

### 4)   IIED Claim

The court finds plaintiff's allegations are sufficient to give rise to a claim for relief under California law for IIED against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske. Fed. R. Civ. P. 8(a).

### 5)   Sexual Harassment and Humiliation Claims

Plaintiff was previously warned by this court that in order to pursue his stated claims for "sexual harassment" and "humiliation," he was required to provide the common law or statutory basis for the claims. (Doc. 7, 11-17.) Plaintiff has not done so, as asserting they are tort claims does not cure the deficiency, and the court recommends the claims be dismissed, with prejudice.

### e.   Defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, Meske, Bennett, Williams, and MTA Doe

Plaintiff alleges that he was taken outside to a field and the hood was removed. Defendant Madreno, a medical technical assistant, attempted to decontaminate plaintiff by using water from a

garden hose, but defendant Diaz ordered that the water be turned off.  Plaintiff told defendants that he needed to be fully decontaminated but defendant Diaz told plaintiff that he "did not give a shit about jailhouse lawyers" and that if plaintiff did not like it, he would spray plaintiff's "black ass" again.  Plaintiff alleges that defendants Madreno, Meske, Jones, Duran, Garcia, Bremner, Cheema, Pina, Hulsey, and Mayo looked on without intervening.

Plaintiff was returned to his cell by defendants Garcia and Hulsey, still naked.  The cell had been stripped bare and had not been decontaminated.  In addition, the water to the cell had been turned off, which prevented plaintiff from decontaminating himself or his cell.  During count at two o'clock a.m., plaintiff told defendant McDowell that he was burning up from the pepper spray and his water had been turned off.  Defendant McDowell told plaintiff that it was all part of his punishment and he was under instruction from defendant Diaz not to assist plaintiff.

At six o'clock a.m., plaintiff told defendants Bennett and Williams that his water was off, and that he was in pain and needed a shower to decontaminate.  Defendants told him they were under orders not to assist plaintiff.  Plaintiff told them that the pain was excruciating and causing his heart to palpitate.  At around six-thirty a.m., defendants Bennett and Williams arrived back at his cell with a John Doe medical technical assistant.  Plaintiff stated that he was burning up, the fumes were unbearable, and he needed to be decontaminated.  Defendant Doe took plaintiff's pulse and blood pressure readings, and told plaintiff that although he was a bit exhilarated, there was nothing defendant could do and to put in a sick call slip.  Plaintiff alleges that he was allowed a two minute shower several days later, but the duration of the shower was insufficient and he was not provided with soap or other decontaminate.  Plaintiff alleges that he was not provided with any materials to decontaminate his cell, so he was again contaminated upon his return to his cell.  Plaintiff alleges that he was left in agony under these conditions for ten days before being allowed to decontaminate himself and his cell.

1)    Eighth Amendment Medical Care Claim

The court finds that plaintiff's allegations that he had a medical need for pepper spray decontamination, but defendants failed to decontaminate him or allow him access to a source where he could be decontaminated, and that he suffered great pain as a result are sufficient to give rise to

a claim for relief under section 1983 for violation of the Eighth Amendment against defendants Diaz, Madreno, Meske, Jones, Duran, Garcia, Bremner, Cheema, Pina, Hulsey, Mayo, McDowell, Bennett, Williams, and John Doe.  Fed. R. Civ. P. 8(a).

2)   <u>Negligence Claim</u>

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission."  Cal. Gov't Code § 844.6(d) (West 2006).  "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."  <u>Ileto v. Glock Inc.</u>, 349 F.3d 1191, 1203 (9th Cir. 2003).  Plaintiff's allegations are sufficient to give rise to a negligence claim against defendants Diaz, Madreno, Meske, Jones, Duran, Garcia, Bremner, Cheema, Pina, Hulsey, Mayo, Santos, McDowell, Bennett, Williams, and John Doe.  Fed. R. Civ. P. 8(a).

f.   <u>Defendants Bennett, Garcia, Castaneda, Issac, Stockman, Gadsden, and Tepperman</u>

Plaintiff alleges that on October 10, 2002, a hearing to address his appeal concerning his wrongful detention in the SHU was scheduled.  While waiting outside the hearing room with defendants Bennett, Garcia, and Castaneda, plaintiff saw defendants Issac, Stockman, Gadsden, and Tepperman pointing at him from inside the hearing room and talking.  Defendant Issac then came out of the room and told plaintiff that they had decided plaintiff would not be allowed to have his hearing unless he took out his dredlocks.  Plaintiff alleges that he told defendant his religious convictions prevented him from removing his dredlocks.  Plaintiff was subsequently told by defendant Issac that his response constituted a refusal to follow a direct order and plaintiff was taken back to his cell by defendants Bennett, Garcia, and Castaneda.  Plaintiff alleges that he was discriminated against by defendants Issac, Stockman, Gadsden, and Tepperman on the basis of his religion.

After appealing the issue, plaintiff appeared before defendants Ortiz, Gadsden, Tepperman, and Isaac on October 17, 2002, and was provided with his hearing on his SHU retention.  Plaintiff alleges that he attempted to present evidence, but defendants would not review his evidence and

///

1    ordered he be retained in the SHU to complete his term.    Defendants then backdated the
2    classification chrono to cover up their discriminatory action on October 11, 2002.

3                                1)    Discrimination Claim

4            Plaintiff alleges that defendants' refusal to conduct his scheduled hearing on his appeal unless
5    he removed his dredlocks constituted "discrimination."    The court construes plaintiff's claim to be
6    one for violation of the Equal Protection Clause of the Fourteenth Amendment.

7            "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated
8    should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing
9    Plyler v. Doe, 457 U.S. 202, 216 (1982)).    "'To state a claim under 42 U.S.C. § 1983 for a violation
10   of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the
11   defendants acted with an intent or purpose to discriminate against the plaintiff based upon
12   membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)
13   (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).    "Intentional discrimination
14   means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v.
15   Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396,
16   1404 (9th Cir. 1994)) (emphasis in original).

17          Plaintiff's allegations are insufficient to give rise to a claim for relief.    Defendants' refusal
18   to provide him with his scheduled hearing because he did not do what they wanted him to do, alone,
19   is insufficient to support a claim that plaintiff was intentionally discriminated against based on his
20   race, religion, or other reason.    With respect to defendants Bennett, Garcia, and Castanada, no claim
21   lies even if plaintiff had alleged facts supporting a claim that he was discriminated against.
22   Defendants Bennett, Garcia, and Castanada were the officers assigned to escort plaintiff to and from
23   his hearing.    Their mere presence during the incident in which plaintiff's hearing was cancelled does
24   not provide a basis upon which to impose liability on them for violating plaintiff's constitutional
25   rights.    The court recommends this claim be dismissed, with prejudice.

26                                2)    Conspiracy Claim

27          In the context of conspiracy claims brought pursuant to section 1983, such a complaint must
28   "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v.

                                                17

County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy.  Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy between defendants.  Further, plaintiff has not alleged facts demonstrating that defendants violated his constitutional rights.  In order to state a cognizable claim for relief for conspiracy, plaintiff must establish that defendants conspired to violate an underlying constitutional right.  The court recommends this claim be dismissed, with prejudice.

### 3)    Due Process

Segregation "may not be used as a pretext for indefinite confinement," Toussaint, 801 F.2d at 1101 (quoting Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983)), and due process therefore requires that following plaintiff's confinement to the SHU to serve an indeterminate term, plaintiff be given periodic reviews of his confinement.  Toussaint, 801 at 1101-02.  However, due process does not necessarily require prison officials to provide the opportunity to set forth favorable evidence or call witnesses.  Toussaint, 801 F.2d at 1101.  The court finds that plaintiff's allegations are insufficient to give rise to a claim for relief against defendants for denial of due process.  The court recommends this claim be dismissed, with prejudice.

### g.    Defendants Pear and Scribner

Finally, on October 10, 2002, defendant Pear interviewed plaintiff on the ground that defendant had received information that plaintiff was planning to stage a demonstration against CDCR.  Plaintiff confirmed the information and stated that on February 26, 2003, the "Three-Strike Backlash Campaign" would be launched, and prisoners would be called upon to lawfully resist CDCR's forced double-celling practice.  Defendant Pear told plaintiff that defendant Scribner, the warden, did not take kindly to prison activism and had ordered Pear to shut down plaintiff's efforts. Plaintiff's incoming and outgoing mail was thereafter flagged and forwarded to defendant Pear for censorship.  Numerous press releases and letters to the media and other outside organizations were forwarded to defendant Pear, who issued plaintiff a CDC 115 Rules Violation Report for inciting on

February 25, 2003.  Plaintiff alleges that his hearing on the charge, which should have been held within thirty days, was delayed until July 30, 2003, by defendant Scribner.  At the hearing, plaintiff discovered that defendant Pear had withheld all of his press releases and letters.  After reviewing the material, the  hearing officer dismissed the charge, finding that plaintiff's campaign fell within CDCR guidelines and the First Amendment.

1)    Retaliation Claim

Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against defendants Pear and Scribner for retaliating against plaintiff for prison activism by censoring his mail and delaying his disciplinary hearing approximately four months.  Fed. R. Civ. P. 8(a).

2)    Mail Censorship Claim

Prisoners have "a First Amendment right to send and receive mail."  Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."  Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) only as test relates to *incoming mail* - Turner test applies to incoming mail).  Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983 against defendants Pear and Scribner for impermissibly infringing on his First Amendment right to send mail.  Fed. R. Civ. P. 8(a).

D.    Conclusion

The court has screened amended plaintiff's complaint and finds that the following claims are cognizable: (1) a free exercise claim against defendant Johnson; (2) an Eighth Amendment failure-to-protect claim against defendants Canton, Flores, Adams, and Atkins; (3) a retaliation claim against defendants Lankford, Diggs, L'Etoile, and Alameda; (4) a retaliation claim against defendants Burruel, Case, Vance, Cary, Tennyson, and Pliler; (5) an access to the courts claim against defendants Burruel, Case, Vance, Cary, Tennyson, and Pliler; (6) a retaliation claim against defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford; (7) a due process claim against

19

defendants Rosario, Pliler, Kalvelage, DeGroot, Diggs, and Lankford; (8) a retaliation claim against defendant Arroyo; (9) an Eighth Amendment medical care claim against defendant Cabral; (8) an Eighth Amendment excessive force claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (9) a state law assault and battery claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (10) a right to privacy claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (11) a state law IIED claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (12) an Eighth Amendment medical care claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, Meske, Bennett, Williams, and MTA Doe; (13) a state law negligence claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, Meske, Bennett, Williams, and MTA Doe; (14) a retaliation claim against defendants Pear and Scribner; and (15) a First Amendment mail censorship claim against defendants Pear and Scribner.

The court further finds that the following claims are not cognizable:  (1) due process claim against defendant Johnson; (2) a due process claim against defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman; (3) a state law IIED claim against defendant Cabral; (4) an Eighth Amendment claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske based on violation of plaintiff's right to privacy; (5) a state law sexual harassment and humiliation claims against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske; (6) an equal protection claim against defendants Bennett, Garcia, Castaneda, Issac, Stockman, Gadsden, and Tepperman; (7) a conspiracy claim against Bennett, Garcia, Castanada, Issac, Stockman, Gadsden, and Tepperman; and (8) a due process claim against Bennett, Garcia, Castanada, Issac, Stockman, Gadsden, and Tepperman.  Plaintiff was previously given leave to amend.  Therefore, the court recommends that these claims be dismissed, with prejudice, for failure to state a claim.

///

20

Accordingly, it is HEREBY RECOMMENDED that:

1.     This action proceed on plaintiff's amended complaint, filed August 30, 2005, on claims one through 15, as identified in the first paragraph of the conclusion of this Findings and Recommendations; and

2.     The following claims be dismissed, with prejudice, for failure to state a claim:

    a.     Plaintiff's due process claim against defendant Johnson;

    b.     Plaintiff's due process claim against defendants Marshal, Dill, Means, Garza, Underwood, Rangel, and Stockman;

    c.     Plaintiff's state law IIED claim against defendant Cabral;

    d.     Plaintiff's Eighth Amendment claim against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske based on violation of plaintiff's right to privacy;

    e.     Plaintiff's state law sexual harassment and humiliation claims against defendants Bremner, Diaz, Jones, Cheema, Duran, Hulsey, Mayo, Garcia, Pina, Madreno, Santos, McDowell, and Meske;

    f.     Plaintiff's equal protection claim against defendants Bennett, Garcia, Castaneda, Issac, Stockman, Gadsden, and Tepperman;

    g.     Plaintiff's conspiracy claim against Bennett, Garcia, Castanada, Issac, Stockman, Gadsden, and Tepperman; and

    h.     Plaintiff's due process claim against Bennett, Garcia, Castaneda, Issac, Stockman, Gadsden, and Tepperman; and

3.     Defendants Marshal, Dill, Underwood, Tepperman, Means, Garza, Rangel, Stockman, Isaac, Castaneda, Gadsden, and Ortiz be dismissed from this action based on plaintiff's failure to state any claims upon which relief may be granted against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, plaintiff may file written

objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **March 2, 2007**                         **/s/ Dennis L. Beck**
3b142a                                        UNITED STATES MAGISTRATE JUDGE