UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM, | 1:05-cv-00086-OWW-GSA-PC |
| Plaintiff, | ORDER REINSTATING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION ON COURT'S CALENDAR |
| v. | (Doc. 178.) |
| M. JOHNSON, et al., | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION BE DENIED |
| Defendants. | (Doc. 178.) |
| | OBJECTIONS, IF ANY, DUE IN 30 DAYS |

**I.    RELEVANT PROCEDURAL HISTORY**

Bryan Ransom ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on January 21, 2005. (Doc. 1.) This action now proceeds on the amended complaint filed by Plaintiff on August 30, 2005, against defendants Adams, Alameida, Atkinson, Bennett, Bremner, Burruel, Cabral, Canton, Carey, Case, Cheema, DeGroot, Diggs, Diaz, Duran, Flores, Garcia, Hulsey, Johnson, Jones, Kalvelage, Lankford, L'Etoile, Madreno, Mayo, McDowell, Meske, Pear, Pina, Pliler, Rosario, Santos, Scribner, Tennison, Vance, and Williams,[1] on Plaintiff's claims for violation of his rights under the United States Constitution.[2] (Doc. 8.)

---

[1] Defendants Canton, Garcia, Madreno, and Williams have not been served in this action.

[2] Plaintiff has claims pending for denial of free exercise of religion under the First Amendment, failure to protect under the Eighth Amendment, retaliation, violations of due process, inadequate medical care under the Eighth Amendment, excessive force, assault and battery, intentional infliction of emotional distress, negligence, and mail censorship.

On December 19, 2008, Plaintiff filed a motion for summary adjudication against defendants B. DeGroot, J. Diggs, M. Kalvelage, and D. Lankford ("Defendants") for violations of due process. (Docs. 178-180.) On March 6, 2009, Defendants filed an opposition to the motion. (Doc. 187.) On May 14, 2009, Plaintiff filed a reply to the opposition. (Docs. 204, 205.) On August 20, 2009, the court vacated Plaintiff's motion for summary adjudication from the court's calendar pending submission of defendants' motion to dismiss. (Doc. 212.) Defendants' motion to dismiss has since been vacated from the court's calendar, and other dispositive motions remain pending in this action. At this juncture, in the interest of moving toward resolution of this action, the court shall reinstate Plaintiff's motion for summary adjudication on the court's calendar for immediate consideration.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact, 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Here, Plaintiff must demonstrate there is no triable issue as to the matters alleged in the amended complaint against Defendants for violation of his rights to due process. Id. This requires Plaintiff to establish beyond controversy every essential element of his claim. Houghton v. South, 965 F.2d 1532, 1536

(9th Cir. 1992); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

The parties bear the burden of supporting their motions and oppositions with the papers they wish the court to consider and/or by specifically referring to any other portions of the record they wish the court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court will not undertake to mine the record for triable issues of fact. Id.

### III.  PLAINTIFF'S ALLEGATIONS

#### A.  Allegations Against Defendants B. DeGroot, J. Diggs, M. Kalvelage, and D. Lankford for violations of due process

At the time of the events at issue, Defendants were members of the Departmental Review Board ("DRB"), all employed at the headquarters of the California Department of Corrections ("CDC"). In the amended complaint, Plaintiff alleges that on January 10, 2002, Defendants granted a request by the classification committee at California State Prison-Sacramento ("CSP-Sac") to assess Plaintiff with an indeterminate Security Housing Unit ("SHU") term, and ordered Plaintiff's transfer to the SHU at CSP-Corcoran ("CSP-COR"). Plaintiff alleges that he was not provided with notice or an opportunity to be heard and that he does not meet the criteria for indeterminate SHU placement.

### IV.  UNDISPUTED FACTS

#### A.  Plaintiff's Submitted the Following as his Claimed Undisputed Facts

1. Defendants B. DeGroot, J. Diggs, M. Kalvelage and D. Lankford are Departmental Review Board (DRB) members.[3]

2. On January 10, 2002, Defendants designated Plaintiff's case as a "DRB Transfer Control" case.

3. The DRB is the sole prison official having charge with deciding whether to transfer a prisoner whose case is "DRB Transfer Controlled."[4]

---

[3] Defendants admit this is true for the time period at issue in this case.

[4] Defendants deny this fact and instead admit that in Plaintiff's case, the DRB approved the commendation of correctional officials at CSP-Sac.

3

    4.     Defendants ordered that Plaintiff be transferred to the Security Housing Unit (SHU) at CSP-COR.[5]

    5.     Plaintiff alleges that defendants assessed Plaintiff with an indeterminate SHU term without affording Plaintiff an opportunity to present his views to the DRB with regard to his SHU placement.[6]

    6.     Plaintiff was retained in the SHU for over five years.

    7.     Plaintiff alleges he was not afforded an opportunity to present his views to the DRB with regard to his SHU placement during the time period he was retained in the SHU.[7]

**B.     Defendants' Additional Undisputed Facts[8]**

    1.     While at Calipatria State Prison, Plaintiff told prison officials that his life was in danger as long as he was housed on a general population yard.

    2.     For this reason, the institutional classification committee at Calipatria recommended that Plaintiff be transferred to the sensitive needs yard (SNY) at the California Substance Abuse Treatment Facility in Corcoran (SATF).

    3.     That transfer was approved by a Classification Service Representative (CSR) on February 29, 2000.

    4.     Upon arrival at SATF, Plaintiff contested his SNY placement. He apparently wanted to be considered a special needs inmate, but did not want to program with "R" suffix inmates.

    5.     The "R" suffix denotes an inmate's status as a sex offender.

    6.     Plaintiff indicated that he would harm other "R" suffix inmates if left on the SNY.

---

[5] Defendants admit they approved the recommendation of correctional officials at CSP-Sac to this effect.

[6] Defendants deny Plaintiff's allegation.

[7] Defendants deny Plaintiff's allegation.

[8] Plaintiff did not admit or deny the additional facts set forth by defendants as undisputed.

7. Plaintiff also refused placement on a general population yard because of his security concerns.
8. His matter was reviewed by a CSR, who recommended transfer to CSP-Sac.
9. The DRB approved that recommendation on June 8, 2001.
10. On June 22, 2001, Plaintiff was received at CSP-Sac.
11. He appeared before the classification committee at CSP-Sac on June 28, 2001.
12. The committee was aware of the reasons for the transfer, and elected to house Plaintiff in administrative segregation pending review by the Warden.
13. Plaintiff was given an opportunity to comment, and stated that he agreed with the committee's actions and understood the reasons for his placement in administrative segregation.
14. On July 5, 2001, Plaintiff was again seen by the classification committee. Plaintiff was given an opportunity to comment on his housing status, and stated he did not want to be housed either on a SNY or a general population yard. He told the committee that the only satisfactory outcome was a release from prison.
15. On August 23, 2001, Plaintiff was again seen by the classification committee. Again he refused to go to either a SNY or a general population yard.
16. He told the committee that he would probably do harm to other inmates on the SNY. Most importantly, as the record of the hearing states, "*S* [Ransom] *believes SHU Indeterminate Placement is appropriate at this time and agrees with Committee's decision to refer S to DRB with that recommendation*."
17. The committee voted to retain Plaintiff in administrative segregation pending completion of the transfer process.
18. On September 20, 2001, Plaintiff again appeared before the classification committee. Given an opportunity to comment on his housing status, he said that he agreed with the committee's action in retaining him in administrative segregation and understood the reasons for his placement there.

5

19. On October 18, 2001, Plaintiff again appeared before the classification committee. He again claimed he could not go to general population or a SNY. He was given an opportunity to comment on his placement, and stated that he agreed to placement in the SHU.

20. On November 15, 2001, Plaintiff again appeared before the classification committee. Once again, he refused to be released to either general population or SNY. Once again, he agreed with the committee's action in retaining him in administrative segregation.

21. On November 15, 2001, defendant Rosario signed a memorandum on behalf of Warden Pliler's, directed to Classification Services Unit Institutions Division Chief Jeff Diggs. The memo recommended an indeterminate SHU term for Ransom.

22. On January 10, 2002, the DRB, composed of defendants DeGroot, Diggs, Kalvelage, and Lankford, approved the transfer.

23. The DRB felt there was no place else to house him.

24. They considered all of Plaintiff's case factors, including numerous letters from him to the classification staff representative and an interview with him regarding placement options.

## V. ANALYSIS

### A. Legal Standard

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id.

The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id.; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the

nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007.)

If a protected liberty interest is implicated, the process due is dependent upon the reason for the segregation. If the segregation is the result of a disciplinary proceeding, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974). As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994). Further, "[s]ome evidence must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985).

However, if the segregation is non-disciplinary in nature, due process requires only that prison officials "hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated," that prison officials "inform the prisoner of the charges against [him] or the reasons for considering segregation," and that the prisoner be allowed "to present his views." Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986). Prisoners are not entitled to "detailed written notice of charges, representation by counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Id.

**B.     Plaintiff's Claim**

Plaintiff argues that Defendants violated the Due Process Clause when on January 10, 2002, the DRB, composed of defendants DeGroot, Diggs, Kalvelage, and Lankford, approved Plaintiff's transfer to the SHU at CSP-COR, where he was retained for over five years, without affording him

7

an opportunity to voice his views to the DRB prior to the transfer or during the time he was in the SHU.

Plaintiff provides evidence of the following. On January 10, 2002, Defendants DeGroot, Diggs, Kalvelage and Lankford were members of the DRB. (UF 1; Ransom Decl, Doc. 180 at 2 ¶4, Exh A at 3.) On January 10, 2002, Defendants designated his case as a "DRB Transfer Control" case. (UF 2; Ransom Decl, Doc. 180 at 2 ¶5, Exh A at 3; Exh B, Kalvelage Admission No. 5.) The DRB is the sole prison unit in charge of deciding whether to transfer prisoners whose cases are designated as "DRB Transfer Controlled." (UF 3; Ransom Decl, Doc. 180 at 2 ¶7; Exh. B, Kalvelage Admission No. 6.) Defendants ordered Plaintiff to be assessed with an indeterminate SHU term and to be transferred to the SHU at CSP-COR. (UF 5; Ransom Decl, Doc. 180 at 2 ¶6, Exh A at 2.) Defendants transferred him to CSP-COR without affording him an opportunity to voice his views to them with regard to his indeterminate SHU placement. (UF 5; Ransom Decl, Doc. 180 at 3 ¶8; Exh B, Kalvelage Admission No. 7.) Plaintiff was retained in the SHU for over five years. (UF 6; Ransom Decl, Doc. 180 at 3 ¶9, Exh C.) Plaintiff was not afforded an opportunity to voice his views to the DRB with regard to his SHU placement during the time he was retained in the SHU. (UF 7; Ransom Decl, Doc. 180 at 3 ¶10; Exh B, Kalvelage Admission No. 9.)

    **C.**    **Defendants' Opposition**

Defendants argue that Plaintiff fails to demonstrate that his claimed undisputed facts entitle him to judgment on his due process claim against them. Defendants maintain that Plaintiff received the due process to which he was entitled for a non-disciplinary segregation placement. (Opp'n at 5.) Defendants present evidence that Plaintiff was given notice at six different classification committee hearings of the reasons they were considering placing him in segregated housing. (Opp'n at 5:10-12; DSUF 1-20; Exhs A-H; Diggs Decl. ¶¶3, 5, 11, 12, Exh A .) Defendants present evidence that Plaintiff was given several opportunities to present his views. (Opp'n at 5:12-14; DSUF 13, 15, 16, 18, 19; Exhs C, E, F, G; Diggs Decl. ¶11 .) Plaintiff only protested once, on July 5, 2001, but only because he wanted to be released from prison, not because he believed some other placement within prison was more appropriate. (Opp'n at 5:14-16; DSUF 14; Exh D.) Plaintiff agreed with the committee that his placement in an indeterminate SHU term was appropriate and that he should be

8

referred to the DRB with a recommendation for such placement. (Opp'n at 5:13-14, 19-20; DSUF 18-20; Exhs F-H.)

Defendants also argue that Plaintiff may not rely on defendant Kalvelage's admissions as evidence, because Kalvelage did not make any admissions.[9] Defendants contend that Kalvelage did not respond at all to Plaintiff's Request for Admissions, and Kalvelage owed Plaintiff no response because Plaintiff's Request was not timely served. Defendants maintain that Plaintiff's Request for Admissions, served on defendant Kalvelage on October 9, 2008, was untimely according to the court's order which required that all discovery requests must be served at least 45 days before the discovery deadline of October 15, 2008. (Court Record, Doc. 124.)

**D.    Plaintiff's Reply**

Plaintiff replies that he has proven his claim, because Defendants admitted in their Statement of Undisputed Facts that the classification committee at CSP-Sac was only charged with "recommending" that Plaintiff be transferred to the SHU, and the DRB was charged with "deciding" whether to transfer him. (DSUF, Exh. C-H, ¶20 Exh. I.)

With respect to defendant Kalvelage's admissions, Plaintiff argues that requests for admissions are distinct from other general discovery devices and are not subject to discovery cut-off dates, and therefore defendant Kalvelage's failure to respond deemed the admissions admitted by default. Plaintiff cites two cases to support his argument: O'Neal v. Medad and Myron, 166 F.R.D. 19 (E.D. Mich. 1996) and Hurt v. Coyne Cylinder Co., 124 F.R.D. 614 (W.D. Tenn. 1989).

**E.    DISCUSSION**

The focus of this motion is limited to whether Plaintiff has established beyond controversy every essential element of his claim. Houghton, 965 F.2d at 1536. In light of the evidence before the court, Plaintiff has not done so. Plaintiff has not proven that due process requires him to be afforded the opportunity to present his views directly to the DRB. The facts are disputed whether the DRB was

---

[9] In his Statement of Undisputed Facts, Plaintiff uses defendant Kalvelage's admissions as evidence that Kalvelage admitted (1) the members of the DRB are the sole prison officials having charge with deciding whether to transfer a prisoner whose case is controlled by them; (2) Defendants did not give Plaintiff an opportunity to present his views to the DRB with regards to his SHU placement; and (3) Plaintiff was not afforded an opportunity to present his views to the DRB with regard to his SHU placement during this five (plus) year period.

9

solely charged with the decision to place Plaintiff in an indeterminate SHU term. Plaintiff did not demonstrate that Ninth Circuit authority holds that requests for admissions are not subject to discovery cut-off dates. Defendants have provided evidence, unopposed by Plaintiff, that Plaintiff was allowed to present his views at six different classification committee hearings, and that Plaintiff agreed with the committee that his placement in an indeterminate SHU term was appropriate and that he should be referred to the DRB with a recommendation for such placement.

In light of the evidence, Plaintiff has not established that he was not afforded due process protections by Defendants. Plaintiff's showing is not sufficient for the court to hold that no reasonable trier of fact could find other than for the Plaintiff.

## VI.   QUALIFIED IMMUNITY

Because the court finds that Plaintiff has not proven the elements of his claim, Defendants' affirmative defense of qualified immunity shall not be considered.

## VII.  CONCLUSION AND RECOMMENDATION

Upon reinstatment of Plaintiff's motion for summary adjudication on the court's calendar, for the reasons set forth herein, the court finds that Plaintiff has not met his burden of establishing beyond controversy every essential element of his due process claim against defendants DeGroot, Diggs, Kalvelage, and Lankford. Therefore, Plaintiff is not entitled to summary adjudication as to that claim. Accordingly, the court HEREBY RECOMMENDS that Plaintiff's motion for summary adjudication, filed December 19, 2008, be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the

///
///
///
///

specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 25, 2010**                              **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE